# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN JOSEPH WILLIAMS

        Plaintiff,

v.                                                          Civil No. 01-694 WJ/DJS

UNITED STATES OF AMERICA,
TOM S. UDALL, Congressman, NORMAN
E. BROWNE, DR. JEFFREY KATZMAN,
DR. THERESA MOYERS, 10 UNKNOWN
DOES,

        Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT UDALL'S MOTION TO DISMISS

THIS MATTER comes before the Court on a Motion to Dismiss by Defendant U.S. Representative Tom Udall, filed on November 5, 2002 **(Doc. 27)**. Plaintiff, who is proceeding *pro se*, describes himself as a disabled veteran who has been diagnosed with post-traumatic stress disorder ("PTSD"). Plaintiff alleges violations of various federal statutes and civil rights including but not limited to 42 U.S.C. § 1983 (First, Fourth, Eighth, Tenth and Fourteenth Amendments; 42 U.S.C. § 1985(3), § 1986 and § 1988); RICO statutes 18 U.S.C. 1961 et seq; and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. Having considered the parties' briefs and the applicable law, I find that Representative Udall's motion is well taken and shall be granted.

A fair reading of Plaintiff's seventy-eight page, seventy-three count complaint indicates that since 1997, Plaintiff believes that Representative Udall has been out to get him in one way or another, and that Mr. Udall may be using his position and power to further an "obsessional

agenda" and "ulterior motive" to "harm all veterans and thereby demoralize our military personnel and possibly jeopardize United States National Security (sic)." Compl. at 6.[1] The complaint contains a lengthy collection of allegations, events and correspondence which apparently have some connection to the Veteran's Administration's refusal to pay for out-of-state counseling and its failure to provide certain but unspecified documents upon Plaintiff's request. Most of Mr. Williams' claims are based on an incident that occurred on October 14, 1999, which resulted in an overnight "incarceration" on the psychiatric unit of the Veterans Administration Hospital in Albuquerque, New Mexico.

The triggering event for this lawsuit started with Mr. Williams contacting the Veterans Administration ("VA") Hospital in an attempt to get funding for PTSD counseling outside of the VA system. Mr. Williams felt that the VA could not guarantee the confidentiality of medical records or therapy sessions because Representative Udall (who was New Mexico Attorney General at the time) would use his "form of police power over the VA" not only to eavesdrop on Plaintiff's therapy sessions, but to "also directly or indirectly control, manipulate or dictate the therapy and therapist for the purpose of causing him horrendous injury." Compl., at 8. Plaintiff claims his conflict of interest with Representative Udall began in 1997 when Mr. Udall charged him and his wife with unfair trade practices for selling psychic equipment. Mr. Udall's "interrogation" mentioned in the complaint refers to questions Plaintiff was asked in connection with the unfair trade charges regarding his military service and past criminal convictions. Plaintiff

---

[1] Mr. Williams claims that he filed criminal complaints against Defendant Udall and others in September 2000 because Mr. Udall had falsified information on his House of Representatives financial disclosure form and because he, along with others involved in prosecuting him on the 1997 Attorney General complaint against him, had "singled him out to prosecute . . . because he was an honorable service-connected disabled veteran." Compl., at 32.

believes that the purpose of those "juxtaposed" questions was to show that "being a Disabled Veteran in New Mexico is worse than even being a criminal." Compl., at 15.

Notwithstanding the hospital staff's assurances that his medical records and counseling sessions are kept confidential, Mr. Williams continued to pursue funding for counseling and treatment away from the VA system. In September 1999 Plaintiff saw a Physician's Assistant at the VA at which time he described his history and conflicts with Mr. Udall, and requested an appointment with Dr. Katzman, the Acting Chief of Psychiatry, to get recommendations about outside source funding for PTSD therapy. Mr. Williams was given an appointment to see Dr. Theresa Moyers, a VA psychologist, on October 14, 1999. When Mr. Williams showed up for his appointment, Dr. Moyers allegedly "started to grill" him about his feelings for Mr. Udall, and whether he (Plaintiff) felt that he was a threat to anyone. Dr. Moyers called in Dr. Katzman and Plaintiff was questioned further. Mr. Williams states that he was afraid that asking the doctors if he could leave might have "triggered a violent solution" by "their accomplices just waiting beyond the door with guns and clubs." Compl. at 9. Plaintiff was frisked by uniformed police officers who found and removed a utility knife, and was told he was being detained because he was evasive about answering questions concerning Mr. Udall's physical safety and his own proclivity to violence.[2] Mr. Williams was then taken to one of the hospital's psychiatric units where he was questioned by other doctors, detained and observed overnight and released the next day.

---

[2] Plaintiff admits that when asked if he could guarantee Mr. Udall's physical safety for the next 48 hours, he answered "No." Plaintiff states that he thought this was a "trick" question because it was possible that Mr. Udall could become involved in an unforeseen car accident. Compl., at 10. When asked if he could think of a situation when he would react violently, Mr. Williams allegedly answered that he was not a violent person, but that he couldn't predict the future, and that if someone violently attacked him or his family, he would violently fight back. Id.

3

The essence of Plaintiff's claims is (1) that Defendants interrogated and forcibly incarcerated him overnight at the VA Medical Center Mental Ward on October 14, 1999, Compl. at 4, 41; (2) that the VA rejected his request for reimbursement of expenses incurred for several counseling sessions in El Paso, and on a more general level, that Defendants collectively conspired (and neglected to prevent a conspiracy) to deprive him of his right to obtain effective medical care for his mental condition, Compl., e.g., at 21, 30, 32, 34 [3]; and (3) that Defendants failed to comply with certain requests for records and information and failed to waive the fee for the document search. Compl., e.g., at 31, 41. Plaintiff accuses Representative Udall not only for causing and exacerbating his PTSD condition, Compl. at 7 (see also at 27 under "G.4"), but also for masterminding his incarceration on the VA psychiatric unit, and the denial of his request for treatment outside of the VA system. See e.g., Compl. at 24. Mr. Williams seeks twenty million dollars in compensatory damages and fifty million dollars in punitive damages for the "deterioration of his physical health" and the "intense mental anguish" he went through as a result of his "interrogation and forcible incarceration," and "malfeasance, misfeasance and nonfeasance of the Defendants."[4] Compl., at 14.

Feelings of persecution by Representative Udall run throughout the complaint, which includes the text of many letters containing the results of psychological evaluations and testing.

---

[3] At the time of the complaint, Plaintiff had had three sessions with Dr. Bryan, and had apparently expended $250.00 to $300.00 round trip airline fare as well as the cost for therapy sessions. The VA's "continued refusal to reimburse" him for these treatment sessions for his PTSD resulted in Mr. Williams' cancellation of these sessions.

[4] Plaintiff also requests a jury that is limited to "veterans, military personnel with Honorable Discharges, and grandparents, parents, spouses, siblings, children and grandchildren of veterans and military personnel with Honorable Discharges." Compl., at 77.

4

One doctor opined that Plaintiff's personality "is dominated by an enduring sense of being being persecuted. . . [T]he triggering episode for his present symptomatology was specific interview questions that occurred in the course of legal prosecution inquiries by Mr. Tom Udall. . . . These questions were deemed by Mr. Williams to be tangential to the specific legal inquiry and therefore unwarranted and represented an attack on all Vietnam veterans in general. . . [T]he pervasive emotional moods of anger, depression and anxiety leave him physical exhausted, occasionally disoriented, and largely unable to effectively manage life stress." Compl., at 29 (reference to evaluation letter dated Jun. 20, 2000).

*Legal Standard*

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shoultz v. Monfort of Colorado, Inc., 754 F.2d 318, 321 (10th Cir. 1985) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

*Constitutional Claims*

Nearly all of Plaintiff's claims against Mr. Udall are based on some form of a conspiracy theory, set out in a seven-page collection of § 1986 and § 1985(3) claims. Compl. at 64-71. The conspiracy allegations range from accusations that Plaintiff's hospital incarceration was carried out with the knowledge of, and as a favor to, Mr. Udall in order to "railroad" him, Compl. at 48, to Mr. Udall's interference with a "contract" between Plaintiff and the VA which afforded him a right to "professional mental therapy in a fear-free environment."  At 76.

A civil conspiracy requires the combination of two or more persons acting in concert.

5

Singer v. Wadman, 745 F.2d 606, 609 (10th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Plaintiff's allegations against Mr. Udall are insufficient as a matter of law to establish a conspiracy, under any of his theories. Mr. Williams believes that Mr. Udall has taken directions in his political career for the sole purpose of destroying Plaintiff and other disabled veterans, with absolutely no evidence other than these alleged facts: Mr. Udall avoided the military draft between 1970 and 1975; Plaintiff and his wife were sued for unfair trade practices by the Attorney General's Office in 1997 for unfair trade practices; Plaintiff was asked questions about his military service and past criminal convictions during the litigation of the unfair trade claim; Mr. Udall now sits on the Veteran Affairs Committee; and Plaintiff was asked questions regarding Mr. Udall's physical safety at the VA hospital in October 1999.[5] Construing the facts favorably toward Plaintiff, I find that this evidence simply does not add up to a meeting of the minds or the existence of an agreement between Mr. Udall and the other Defendants, either directly or circumstantially, that could constitute any form of conspiracy.

*Other Constitutional Claims*

Plaintiff's allegations of constitution violations by Mr. Udall meet the same fate. The twenty pages which list numerous causes of action against Mr. Udall and the other Defendants consist of references to forcible incarceration and violations of rights to privacy and medical care, but do not have any factual support. A short sampling of these counts in which Mr. Udall is named is illustrative of the entire tenor of Plaintiff's complaint: count of Fraud, wherein he alleges that the doctors failed to warn him that their "true roles were investigative or law enforcement

---

[5] As a "reasonable explanation" for Mr. Udall's alleged conduct, Plaintiff offers the "clear conclusion that Defendant Udall suffers from serious mental disorder. . . ." Compl. at 46.

[sic]"(Compl. at 75); Interference with Civic and Family Duties alleging that Defendants (including Mr. Udall) interfered with his duty to family and nation to seek "effective therapy in a fear-free environment" (Compl. at 63); unreasonable seizure under the Fourth Amendment (Compl. at 59)[6]; "Fifth Amendment" deprivation of property without due process based on Plaintiff's requests for records (Compl. at 60); and Eighth Amendment Cruel and Unusual Punishment based on his "forcible incarceration" overnight at the VA hospital (Compl. at 60).

*Negligence Claims*

The remainder of Plaintiff's claims against Mr. Udall flow from an affirmative duty Plaintiff ascribes to Mr. Udall by virtue of his political position, and more specifically, his "power and control over the VA." Compl. at 47. Plaintiff maintains that he could have received adequate medical care but for Mr. Udall's lack of action. Plaintiff alleges that Mr. Udall should have known about his letter campaign and efforts to obtain out-of-state therapy, and Plaintiff alleges that Mr. Udall should have been aware that Plaintiff could be "manipulated into a trap" that Mr. Udall himself created. Compl. at 47-58.

As Representative Udall correctly notes, he does not have an affirmative duty towards Plaintiff which arises from his position as a Member of Congress and his role within the Veteran Affairs Committee does not create a master-servant relationship between the VA Defendants and Mr. Udall. None of Plaintiff's claims set forth facts which support a viable theory of liability against Mr. Udall. See, e.g., Richardson v. Harper, 864 F.2d 85, 88 (9th Cir. 1988) (affirming dismissal of conclusory allegations that U.S. Senator violated plaintiff's civil rights); Craft v.

---

[6] Even assuming there *was* unreasonable seizure (although the facts even as presented by Plaintiff do not support this theory), there is absolutely no evidence that Mr. Udall had any connection to Plaintiff's hospital detention.

7

McNulty, 875 F.Supp. 121, 124 (N.D.N.Y. 1995) (dismissing complaint that alleged Congressman failed to investigate a reported wrongdoing by Internal Revenue Service employees); McDonough v. Ney, 599 F.Supp. 679, 683 (D.Me. 1988) (dismissing complaint where plaintiffs alleged a failure to intervene, which was found to be neither inappropriate nor actionable). Accordingly, these claims will also be dismissed.

Despite a liberal construction afforded to *pro se* complaints, the Court cannot "supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." Dunn v. White, 880 F.2d 1188, 1197 (10th Cir.1989) (per curiam). Under the most liberal standards of construction, Mr. Williams has failed to state a claim against Representative Udall.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Dismiss by Defendant U.S. Representative Tom Udall **(Doc. 27)** is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE